# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY MORGAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TERMINIX GLOBAL HOLDINGS, INC., NAREN GURSAHANEY, DEBORAH H. CAPLAN, DAVID J. FREAR, LAURIE ANN GOLDMAN, STEVEN B. HOCHHAUSER, BRETT PONTON, TERESA M. SEBASTIAN, STEPHEN J. SEDITA, and CHRIS S. TERRILL,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony Morgan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Terminix Global Holdings, Inc. ("Terminix" or the "Company") and the members of Terminix's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge the Company with Rentokil Initial plc ("Rentokil Initial") (the "Proposed Transaction").

2. On December 13, 2021, Terminix entered into an Agreement and Plan of Merger with Rentokil Initial and Rentokil Initial's wholly owned subsidiary Rentokil Initial US Holdings, Inc. (as amended on March 14, 2022, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Rentokil Initial will issue to Terminix shareholders at closing aggregate consideration comprised of approximately 643.29 million new Rentokil Initial shares (representing approximately 128.66 million ADSs based on a 1:5 ADS to Rentokil Initial share ratio) and approximately US$1.3bn in cash. Based on Rentokil Initial's volume weighted share price and the 5-day average of the Sterling-US Dollar exchange rate as of August 21, 2022, the implied value of the merger consideration was approximately $43.33 per share of Terminix common stock, with aggregate consideration of 80% cash and 20% stock.

3. On September 7, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Terminix stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Terminix and Rentokil Initial; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Terminix stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Terminix stockholders to vote on the Proposed Transaction is currently scheduled for October 6, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Terminix's other shareholders to make an informed decision

whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Terminix's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Terminix common stock.

10. Defendant Terminix is a Delaware corporation, with its principal executive offices located at 150 Peabody Place, Memphis, Tennessee 38103. Terminix's shares trade on the New York Stock Exchange under the ticker symbol "TMX."

11. Defendant Naren Gursahaney has been Non-Executive Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Deborah H. Caplan has been a director of the Company at all relevant times.

13. Defendant David J. Frear has been a director of the Company at all relevant times.

14. Defendant Laurie Ann Goldman has been a director of the Company at all relevant times.

15. Defendant Steven B. Hochhauser has been a director of the Company at all relevant times.

16. Defendant Brett Ponton has been Chief Executive Officer and a director of the Company at all relevant times.

17. Defendant Teresa M. Sebastian has been a director of the Company at all relevant times.

18. Defendant Stephen J. Sedita has been a director of the Company at all relevant times.

19. Defendant Chris S. Terrill has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Founded in 1929, Terminix provides residential and commercial termite and pest management services. The Company offers termite and pest control services, including termite remediation, annual termite inspection, and prevention treatments with termite damage repair guarantees, periodic pest management services, insulation services, crawlspace encapsulation, wildlife exclusion, and disinfection services. Terminix's services protect against termite damage,

4

rodents, insects and other pests, including cockroaches, spiders, wood-destroying ants, ticks, fleas, mosquitos, and bed bugs. The Company serves under the Terminix, Assured Environments, Copesan, Gregory, McCloud, and Nomor AB brands.

**The Proposed Transaction**

22. On December 14, 2021, Terminix announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **Transaction summary**
>
> The Boards of Directors of Rentokil Initial plc ("Rentokil Initial") and Terminix Global Holdings, Inc. ("Terminix") are pleased to announce that Rentokil Initial and Terminix have entered into a definitive agreement (the "Agreement") under which Rentokil Initial will acquire Terminix for stock and cash (the "Combination" or the "Transaction"). The Transaction will bring together two complementary businesses (the "Combined Group") to create the global leader in pest control and hygiene & wellbeing, and the leader in the pest control business in North America, the world's largest pest control market.
>
> Under the terms of the Agreement, Rentokil Initial will issue to Terminix shareholders at closing aggregate consideration comprised of approximately 643.29 million new Rentokil Initial shares (representing approximately 128.66 million American depository shares ("ADSs"), based on a 1:5 ADS to Rentokil Initial share ratio) and approximately US$1.3bn in cash. Based on Rentokil Initial's 5-day average daily volume weighted share price and the 5-day average of the Sterling-US Dollar exchange rate both over the period spanning 6 to 10 December 2021 inclusive, this values the entire share capital of Terminix at US$6.7billion, implying a value of US$55.00 per share of Terminix common stock, and represents an aggregate consideration mix of 80% stock and 20% cash and:
>
> - a premium of 47.0% over the closing price of Terminix common stock on 13 December 2021 (being the last trading day prior to this announcement); and
> - a premium of 32.5% over the 90-day volume weighted average share price of Terminix ending on 13 December 2021.
>
> Terminix shareholders may elect to receive all cash or all stock consideration, subject to proration in the event of oversubscription. Each Terminix share for which no election or an invalid election is received will be deemed to have elected for all stock consideration.

5

The value of the per share cash election and the value of the per share stock election will be equalised ahead of closing such that the value of each election choice will be substantially the same.

The total number of new Rentokil Initial ADSs to be issued and the aggregate amount of cash to be paid under the terms of the Agreement will not vary as a result of individual election preferences.

As part of the Combination, Rentokil Initial will list the American Depository Receipts ("ADRs") evidencing the ADSs on the New York Stock Exchange ("NYSE"). The Combination will result in Terminix's existing shareholders owning approximately 26% of the Combined Group on completion and sharing the benefits accruing to the Combined Group.

The Transaction will combine two leading brands with a long cultural heritage, outstanding talent and strong focus on people, customers and ESG. Upon completion, the Combined Group will have c.56,000 colleagues serving c.4.9m customers around the world from 790 locations. The enlarged business will have a strong platform for growth, particularly in North America, and an attractive financial profile to support future growth, including through acquisitions and continued investment in innovation and technology. For the year ended 31 December 2020, the Combined Group's pro forma revenue would have amounted to US$5.7bn[1] (£4.3bn), with EBITDA of US$1.2bn (£897m) and Free Cash Flow of US$608m (£458m).

The Combination is expected to create significant value, enhance long-term growth potential, be highly cash generative and present a compelling industrial logic, supported by:

- increased scale and leadership in the global pest control market;
- substantially increased scale in North America, providing an enlarged platform for profitable growth;
- a complementary and synergistic portfolio combination; and
- an attractive financial profile.

The Combination is expected to generate material annual pre-tax net cost synergies of at least US$150m (£113m) by the third full year post completion. Run rate synergies are expected to accumulate c.30%, c.80% and 100% in the first, second and third 12-month periods respectively, post completion. In achieving these synergies, the Combined Group expects to incur aggregate cash implementation costs of approximately US$150m, half of which will be incurred in the first 12 months post completion. The Transaction is expected to deliver mid-teens percent accretion to Rentokil Initial's earnings per share in the first full year post completion[2].

**Recommendations**

The Boards of Directors of both Terminix and Rentokil Initial have unanimously approved the Transaction and resolved to recommend that their respective shareholders vote in favour of it.

**The Materially Incomplete and Misleading Proxy Statement**

23.     On September 7, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Terminix stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Terminix and Rentokil Initial; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Lazard.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Terminix and Rentokil Initial*

24.     The Proxy Statement fails to disclose material information concerning the financial projections for Terminix and Rentokil Initial.

25.     For example, the Proxy Statement fails to disclose the standalone unlevered, after-tax free cash flows that Terminix was forecasted to generate during the fourth quarter of calendar year 2021 and during calendar years 2022 through 2025 utilized by Lazard in connection with its *Discounted Cash Flow Analysis* of Terminix, as well as the underlying line items.

26.     The Proxy Statement similarly fails to disclose the standalone unlevered, after-tax free cash flows that Rentokil Initial was forecasted to generate during the third and fourth quarters of calendar year 2021 and during calendar years 2022 through 2025 utilized by Lazard in connection with its *Discounted Cash Flow Analysis* of Rentokil Initial, as well as the underlying line items.

27. In addition, with respect to the Company's September 2021, October 2021 and December 2021 financial projections for Terminix and its financial projections for Rentokil Initial, the Proxy Statement fails to disclose the line items underlying the Company's and Rentokil Initial's projected (i) Adjusted EBITDA; and (ii) Free Cash Flow.

28. The Proxy Statement further fails to disclose a summary of the Wall Street equity analysts' consensus estimates for Terminix utilized by Lazard in connection with the analyses underlying its fairness opinion.

*Material Misrepresentations and/or Omissions Concerning Lazard's Financial Analyses*

29. The Proxy Statement fails to disclose material information concerning Lazard's financial analyses.

30. With respect to Lazard's *Discounted Cash Flow Analysis* of Terminix, in addition to the Company's unlevered free cash flows, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.8% to 8.8%.

31. With respect to Lazard's *Discounted Cash Flow Analysis* of Rentokil Initial, in addition to the unlevered free cash flows for Rentokil Initial, the Proxy Statement fails to disclose a quantification of: (i) Rentokil Initial's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 5.3% to 6.3%.

32. With respect to Lazard's *Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose: (i) Terminix's and Rentokil Initial's respective estimated EBITDA for calendar year 2024; (ii) the inputs and assumptions underlying the discount rate of 9.4% for Terminix and 7.0% for Rentokil Initial; and (iii) Rentokil Initial's estimated annual dividend payments before December 31, 2023.

33. With respect to Lazard's *Analyst Target Prices* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

34. In sum, the omission of the above-referenced information renders statements in the "Certain Terminix Unaudited Prospective Financial Information" and "Opinion of Terminix's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Terminix will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Terminix**

35. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Terminix is liable as the issuer of these statements.

37. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

41. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Terminix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Terminix and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

47.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Terminix, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 19, 2022    **ACOCELLI LAW, PLLC**

By */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*